**Steve BLAKELY, as next friend of Dawn Blakely, Plaintiff–Appellant,**

v.

**CAMP ONDESSONK, Catholic Diocese of Belleville, Department of Outdoor Education, Defendant–Appellee.**

No. 94–1854.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1994.

Decided Oct. 19, 1994.

326

Leah R. Cooper (argued), Tod D. Megibow and Mike Morse, Megibow & Edwards, Paducah, KY, for plaintiff-appellant.

Richard J. Zalasky (argued) and Gary S. Wolfe, Rabbit, Pitzer & Snodgrass, St. Louis, MO, for defendant-appellee.

Before BAUER and MANION, Circuit Judges, and GRANT, District Judge.*

BAUER, Circuit Judge.

Plaintiff Steve Blakely filed this suit on behalf of his daughter, Dawn Blakely, who was injured after falling off a cliff on property owned by the defendant Catholic Diocese of Belleville ("Diocese"). The complaint alleges that the Diocese was negligent in failing to properly guard the cliff and warn of its danger. The complaint also alleges that the Diocese willfully and wantonly maintained the property and that the property was an attractive nuisance. The district court granted summary judgment to the Diocese on all claims, and we affirm.

I.

Camp Ondessonk is a tract of land of approximately 982 acres in southern Illinois, owned by the Diocese and partially surrounded by the Shawnee National Forest. Camp Ondessonk provides group camping, educational, and recreational programs to the public for a fee. The camp also permits individuals and small groups to hike on its trails for a fee. Camp officials require hikers to register at the front office of the camp and sign a log book for visitors before using the trails. The camp requests all visitors to respect its policies and procedures, which include the following: (1) firearms or explosives of any kind are not permitted; (2) state law prohibits underage drinking; and (3) rock climbing and rappelling are only permitted while under the supervision of camp staff.

* The Honorable Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

The camp has one main entrance secured by a gate which is accessible by automobile. There is another entrance to the camp at the end of a county road which is secured by a gate and a sign indicating private property. Camp officials have posted no-trespassing signs, erected a fence with barbed wire, strung cable, and piled brush to discourage unauthorized entries to the camp. Due to the size of the property and the national forest, however, there are numerous areas without any barriers where a person can enter the camp. Unauthorized campers are reported to the front office and requested to leave. The county sheriff's department also patrols the county road and removes people from the property at the request of camp officials.

On Friday, April 10, 1992, Dawn Blakely and her friend, Kym Bell, arrived at the camp at approximately 8:30 p.m. in a car driven by Bell. Blakely was seventeen years old at the time. Blakely and Bell did not enter through the main entrance and did not register at the front office. Blakely and Bell parked at the end of the county road and walked through a path to a cliff on the property to join other campers. Bell does not recall any signs, gates, or fences. None of the campers with Blakely and Bell registered with the camp. David Frensley, one of Blakely's companions, testified in his deposition that the campers knew they were on private property but did not care. Blakely had met with the campers several days earlier and knew that there were cliffs and a waterfall on the property.

The campers built a fire and consumed beer and other alcoholic beverages. The edge of the cliff was clearly visible to the campers. Blakely had consumed beer prior to arriving on the property and may have consumed beer during the evening. Blakely was warned on several occasions by her companions to be careful around the edge of the cliff. At some point during the evening, the campers began shooting bottle rockets at another group of campers below the cliff.[1]

Blakely was discovered missing from the group at approximately 2:00 a.m. on April 11 and was found at the bottom of the cliff, apparently having fallen. She was transported by helicopter to St. Francis Medical Center in Cape Girardeau, Missouri. Tests performed by the hospital revealed that her blood alcohol level was .14 following her fall, and a urine test was positive for opiate. As a result of her injuries, Blakely is confined to a wheelchair and requires full-time nursing care. Camp officials were unaware of the campers' presence until the afternoon following Blakely's accident.

## II.

■ We review the district court's grant of summary judgment *de novo,* applying the same standards as the district court. *Sivard v. Pulaski County,* 17 F.3d 185, 188 (7th Cir.1994). Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that Illinois law is applicable in this diversity case. *See Miller v. Long–Airdox Co.,* 914 F.2d 976, 978 (7th Cir.1990) (Illinois choice of law rules presume that the law of the state where the injury occurred governs unless another state has a more significant relationship to the occurrence or to the parties.).

■ Under Illinois law, the duty a landowner owes to a person on the land depends upon that person's status as an invitee, licensee, or trespasser. "A person is an invitee if (1) he enters the premises of another by express or implied invitation; (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land; *and* (3) there is a mutuality of benefit or a benefit to the owner." *Figueroa v. Evangelical Covenant Church,* 879 F.2d 1427, 1431 (7th Cir.1989) (emphasis in original) (citation omitted). A licensee is a person "who enters the premises with the express or implied consent of the owner to satisfy his own purposes rather than for the mutual benefit of himself and the owner or a purpose connected with the owner's business." *Skoczylas v. Ballis,* 191 Ill.App.3d 1, 138 Ill.Dec. 398, 400, 547 N.E.2d

---

1. The record does not indicate how this second group of campers entered the property.

565, 567 (1st Dist.1989). "A trespasser is a person who enters the premises without permission, invitation or other right, and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Id.* A landowner owes both invitees and licensees a duty of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." 740 ILCS § 130/2. A landowner owes a trespasser only a duty to refrain from willful and wanton conduct. *Roland v. Langlois*, 945 F.2d 956, 959 (7th Cir.1991); *Skoczylas*, 138 Ill. Dec. at 400, 547 N.E.2d at 567.

■ Blakely first contends that the district court erroneously concluded that she was a trespasser as a matter of law.[2] Blakely asserts that she was an invitee because the camp was open to the public and because the Diocese extensively advertised the camp in person and through publications. The camp's invitation to the public was limited, however, to camping and hiking activities through its programs and under camp supervision. Visitors were required to enter through the main entrance, register with the front office, pay a fee, and follow the camp's policies and procedures, which prohibited underage drinking and the possession of fireworks. Blakely and her companions did not enter through the main entrance, did not register with the front office, did not pay a fee, and were in possession of alcohol, fireworks, and drugs. The campers had no permission to be on the premises and conferred absolutely no benefit to the camp through their presence, of which camp officials were unaware until after Blakely's accident. The district court did not err in concluding that Blakely was a trespasser as a matter of law.

■ Blakely next asserts that even if she was a trespasser, the Diocese still owed her a duty of reasonable care because she

had permissive use of the premises. Under Illinois law, a landowner owes a duty of reasonable care to trespassers if the landowner habitually acquiesces in repeated trespass to the extent that "the tolerance is so pronounced as to be tantamount to permission."[3] *Summer*, 118 Ill.Dec. at 891, 522 N.E.2d at 346. A landowner's mere failure to take burdensome and expensive precautions to keep trespassers out, which may well be futile, is not equivalent to acquiescence. *Miller v. General Motors Corp.*, 207 Ill. App.3d 148, 152 Ill.Dec. 154, 158, 565 N.E.2d 687, 691 (4th Dist.1990), *appeal denied*, 139 Ill.2d 597, 159 Ill.Dec. 109, 575 N.E.2d 916 (1991). Prior to Blakely's accident, camp officials attempted to discourage trespassers from entering the camp by posting no-trespassing signs, erecting a fence with barbed wire, stringing cable, and piling brush on trails leading to the property. Trespassers were reported to the front office and asked to leave. The county sheriff's department also removed unauthorized visitors from the camp at the request of camp officials. Although the camp's attempts to discourage trespassers may not have been completely successful, the camp clearly did not tolerate trespassers to such an extent as to be tantamount to permission.

■ Blakely also asserts that a genuine issue of material fact exists concerning whether the Diocese's conduct toward her was willful and wanton. Willful and wanton conduct "is that which shows either a deliberate intention to harm, or an utter indifference to or conscious disregard for the safety of others." *Summer*, 118 Ill.Dec. at 891, 522 N.E.2d at 346. The Diocese's conduct was not willful and wanton. Camp officials were unaware of Blakely's presence on the property until after her accident. There were no traps or other conditions on the property

2. Illinois courts treat an entrant's status on land as a question of law when no material facts are in dispute. *Roland*, 945 F.2d at 960; *Sumner v. Hebenstreit*, 167 Ill.App.3d 881, 118 Ill.Dec. 888, 891, 522 N.E.2d 343, 346 (5th Dist.1988).

3. A separate exception to the trespasser rule exists under Illinois law which requires a landowner to exercise ordinary care to protect and/or warn a trespasser of artificial conditions involving a risk of death or serious bodily harm if the

landowner knows of or reasonably anticipates the presence of the trespasser. *Lee v. Chicago Transit Auth.*, 152 Ill.2d 432, 178 Ill.Dec. 699, 705, 605 N.E.2d 493, 499 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993); *see also* Restatement (Second) of Torts § 337 (1965). This exception does not assist Blakely; the cliff from which she fell was a natural condition of the land.

intended to harm trespassers. Camp policy permits rock climbing and rappelling only while under the supervision of camp staff. Illinois law recognizes no duty to warn a trespasser of an open and obvious danger of which the trespasser is also aware. *Id.* It is difficult to imagine a danger more open and obvious than a cliff which is clearly visible to a trespasser.

## III.

Blakely was a trespasser against whom the Diocese did not engage in willful and wanton conduct. The district court's grant of summary judgment to the Diocese is AFFIRMED.