2019 IL App (2d) 180923
No. 2-18-0923
Opinion filed September 3, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| KUN MOOK LEE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-104 |
| | ) | |
| YOUNG ROK LEE, | ) | Honorable |
| | ) | Diane E. Winter, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Schostok and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Kun Mook Lee (Kun Mook), appeals from an order of the trial court granting summary judgment in favor of defendant, Young Rok Lee (Young Rok). For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On October 11, 2015, Kun Mook and Young Rok were members of the same church. Seung Jang (Pastor Jang) was their pastor. On that afternoon, Kun Mook and Pastor Jang appeared at Young Rok's house even though neither's assistance had been requested, neither had been invited, and both had been specifically told not to come to Young Rok's house. Nevertheless, they arrived at Young Rok's house with equipment to cut a tree limb on the

property. Pastor Jang provided the equipment. Young Rok did not provide, maintain, or otherwise supply any of the equipment used in the subsequent tree trimming efforts.

¶ 4 After looking at the tree limb, Kun Mook immediately said that the work should be left to professionals because the tree limb was too large and too high and the work would be dangerous. Nevertheless, Kun Mook and Pastor Jang unloaded the equipment from the car and began affixing two smaller ladders together with wire, to reach the needed height. Young Rok was in the backyard mowing his lawn at that time.[1] When Young Rok came to the front yard and saw Pastor Jang and Kun Mook, he immediately told the men to stop their efforts and not to cut the tree limb, because it was too high and too dangerous. The two men ignored Young Rok and continued to try to cut the limb off the tree. Young Rok eventually assisted them in their efforts.

¶ 5 Kun Mook thought that the tree limb might damage the roof when it fell after being cut, so Young Rok tied a rope around the limb being cut and tied the other end to another limb so that the cut limb would not fall and damage the roof. The two ladders that were tied together were erected and placed against *the very limb to be cut*. Kun Mook volunteered to ascend the ladders—to a height of 20 to 25 feet while wearing dress shoes and carrying an electric chainsaw—to cut the limb, which was around 8 to 12 inches in diameter. Kun Mook then climbed the ladders and cut the limb. He recalled only cutting the limb and falling. Pastor Jang believed that Kun Mook fell when the limb hit the ladder as it fell after being cut. Kun Mook sustained life-threatening injuries as a result of the fall.

---

[1] There are differing versions of facts regarding whether Young Rok was actually mowing his backyard or waiting in his front yard when the men arrived and at what point all three men were involved in trying to cut down the tree limb. However, those factual differences are irrelevant for purposes of our review.

¶ 6    On February 6, 2017, Kun Mook filed a one-count complaint sounding in negligence against Young Rok.  In the complaint, Kun Mook alleged that Young Rok failed to provide appropriate tools, safe instruction, a safe place to perform the work, and appropriate safety equipment, and failed to adequately supervise the work and secure the debris.  Young Rok answered the complaint and raised the affirmative defense of contributory negligence.  Kun Mook was given leave to file a first amended complaint, and that complaint was filed on September 13, 2017.  In the first amended complaint, Kun Mook added Pastor Jang as a defendant.  That complaint also sounded in negligence, with the same allegations in the original complaint now directed at Young Rok in count I and Pastor Jang in count II.  Pastor Jang answered the first amended complaint and raised the affirmative defense of contributory negligence.  Pastor Jang also filed a counterclaim for contribution.  Young Rok also answered that complaint, raised the affirmative defense of contributory negligence, and filed a counterclaim for contribution.

¶ 7    On March 19, 2018, Kun Mook filed a motion for a good-faith finding.  In the motion, Kun Mook noted that Pastor Jang had insurance coverage for the incident under his homeowner's insurance policy and that the insurance company had tendered the limits of Pastor Jang's policy, $100,000, to Kun Mook.  The trial court entered a good-faith finding as to the settlement between Kun Mook and Pastor Jang.

¶ 8    On June 8, 2018, Young Rok filed a second affirmative defense and referred to the open-and-obvious rule.  Specifically, Young Rok alleged that, when Kun Mook fell, Kun Mook had a duty to exercise ordinary care for his own safety, including the duty to avoid open-and-obvious dangers.  Notwithstanding that duty, Young Rok alleged, Kun Mook "breached his duty by carelessly and negligently failing to appreciate and avoid a danger so open and obvious,

specifically, two ladders affixed together reaching considerable heights leaned against a tree limb to be cut with an electric chainsaw, that any person would reasonably be expected to see it." Young Rok alleged that the existence of the open-and-obvious condition barred the relief Kun Mook prayed for in his first amended complaint.

¶ 9    On July 13, 2018, Young Rok filed a motion for summary judgment. After a hearing, the trial court granted the motion. Kun Mook timely appeals.

¶ 10                             II. ANALYSIS

¶ 11    On appeal, Kun Mook argues that the trial court erred in granting Young Rok's motion for summary judgment, because it disregarded his chosen theory of liability (ordinary negligence) and required him to overcome a defense to a theory (premises liability) he chose not to plead. Kun Mook contends that, in Illinois, the open-and-obvious rule applies only to premises- and product-liability cases. He claims that no Illinois case has specifically held that the open-and-obvious rule applies to ordinary-negligence cases, whereas several cases have "indicated that in Illinois the open and obvious doctrine does not apply to ordinary negligence claims." As support for this claim, Kun Mook cites *Smart v. City of Chicago*, 2013 IL App (1st) 120901; *Chu by Chu v. Bowers*, 275 Ill. App. 3d 861 (1995); *Passarella v. NFI Interactive Logistics, LLC*, No. 12-C-4147, WL 4148674 (N.D. Ill. July 9, 2015); and *Jones v. Union Pacific R.R. Co.*, No. 12-C-771, WL 5251993 (N.D. Ill. Sept. 8, 2015).

¶ 12    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). While summary judgment provides a swift means to resolve a lawsuit, it is also a severe means of disposing of litigation. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12.

Because of this, the court must construe the record strictly against the moving party and favorably toward the nonmoving party, and the court should grant summary judgment only if the moving party's right to judgment is clear and free from doubt. *Id*. Appellate review of a summary judgment ruling is *de novo*. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16.

¶ 13   To proceed in an action for negligence, the plaintiff must establish that the defendant owed a duty to the plaintiff, that the duty was breached, and that the breach proximately caused the injuries that the plaintiff sustained. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. A legal duty is a prerequisite to liability. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447 (1996). The existence of a duty is a question of law, and, in determining whether a duty existed, the trial court considers whether a relationship between the parties existed that imposed a legal obligation upon one party for the benefit of the other party. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 215 (1988). Without a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper. *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 216 (2005).

¶ 14   In 2012, our supreme court held that relationship-induced duty was the sum of four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transportations, Inc.*, 2012 IL 110662, ¶ 18.

¶ 15   Section 343 of the Restatement (Second) of Torts provides as follows:

> "A possessor of land is subject to liability for physical harm caused to his invitees
> by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Restatement (Second) of Torts § 343 (1965).

¶ 16    The Illinois Supreme Court adopted section 343 of the Restatement in *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 150-51 (1990). The *Ward* court also adopted the open-and-obvious exception to the duty of care as set forth in section 343 of the Restatement. That exception provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Restatement (Second) of Torts § 343(A)(1) (1965)

See also *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 20.

¶ 17    There are two exceptions to the open-and-obvious rule: the "distraction exception" and the "deliberate encounter" exception. *Id*. The former exception refers to a circumstance where the landowner "has reason to expect that the invitee's attention may be distracted so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A cmt. f, at 220 (1965). The latter exception arises when the landowner "has reason to expect that the invitee will proceed to encounter the

known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." *Id.*

¶ 18    In *Bujnowski v. Birchland, Inc.*, 2015 IL App (2d) 140578, ¶ 30, we expressly stated

"a *per se* rule for open and obvious conditions, albeit one with several moving parts: if (1) the condition is open and obvious and (2) no exception applies, then there is no duty.  The last two factors of the four factor test [(as set out in *Simpkins*)], however strongly they militated in favor of a duty, *cannot* outweigh the first two factors." (Emphasis in original.)

¶ 19    In his first amended complaint, Kun Mook alleged that Young Rok lived at the home where the accident occurred and that Kun Mook was an invitee of Young Rok's.  Generally, the allegations surrounded the fact that Young Rok supervised the work being done at his house, provided tools for the project, and retained control of all parts of the work being done.  Kun Mook alleged that Young Rok had a duty to exercise reasonable care under the circumstances to protect Kun Mook's safety and that he breached that duty when he failed to provide appropriate tools, safe instruction, a safe place to perform the work, and appropriate safety equipment, and failed to adequately supervise the work and secure the debris.

¶ 20    Having completely reviewed the record, we find that the trial court properly granted summary judgment in favor of Young Rok.  First, Kun Mook is incorrect when he argues that the open-and-obvious rule applies only to premises-liability cases.  We noted in *Bujnowski* that our supreme court had applied the open-and-obvious rule in 1990 in *Ward*, an ordinary-negligence case.  *Id.* ¶ 17; see *Ward*, 136 Ill. 2d 132.  More recently, our supreme court found that the open and obvious rule applied in a negligence case.  *Bruns v. City of Centralia*, 2014 IL 116998.  Although *Bruns* involved the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102 (West 2012)), the court held that the Act did not create a duty for

the city to exercise ordinary care to maintain its property in a reasonably safe condition; the Act simply codified the common law. *Bruns*, 2014 IL 116998, ¶ 15. In looking to the common law, the court applied the open-and-obvious rule to the facts of that case to find no liability on the city's part. *Id*. ¶ 3.

¶ 21 Many appellate court cases have likewise applied the open-and-obvious rule to negligence actions. *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669 (pile of snow was an open and obvious condition that precluded liability of landlord and landscaping company in a negligence action); *Crosson v. Ruzich*, 2018 IL App (5th) 170235 (homeowner was not liable for home-health-care worker's injuries when worker fell off homeowner's porch that had no railing, when the porch was an open-and-obvious danger and worker had accessed the porch several times previously); *Farrell v. Farrell*, 2016 IL App (3d) 160220 (summary judgment for homeowner in a negligence action where a dirt bike ridden by plaintiff was open and obvious danger); *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 20 ("[t]he open and obvious doctrine addresses the essential element of any duty in a negligence cause of action" (citing *Choate*, 2012 IL 112948)).

¶ 22 We also disagree with Kun Mook's claim that several cases have "indicated that in Illinois the open and obvious doctrine does not apply to ordinary negligence claims." As noted, Kun Mook cites *Smart*, *Chu by Chu*, *Passarella*, and *Jones*.

¶ 23 In *Smart*, the plaintiff alleged that he was injured while bicycling on a City of Chicago bike path that was being resurfaced by the city. The jury returned a verdict for the plaintiff, and the city appealed. One of the issues on appeal was whether the complaint sounded in premises liability or negligence. Finding that the complaint sounded in negligence, the court found that the duty was statutorily imposed, pursuant to the Act. *Smart*, 2013 IL App (1st) 120901, ¶ 52.

(an entity's duty to " 'maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended the use of the property' ") (quoting 745 ILCS 10/3-102(a) (West 2006)). A common-law duty analysis was not conducted and the court found that the open-and-obvious rule was not an appropriate issue before the jury, because "the City [did] not explain how a jury could have found that the hazardous conditions of the intersection were open and obvious when the City's only witness testified that the street was perfectly level and that the gash or shallow trench was merely a 'concrete shadow.' " *Id*. ¶ 56. *Smart* does not stand for the proposition that the open-and-obvious rule does not apply to ordinary-negligence cases; it held only that *under the facts of that case* there was no evidence of an open-and-obvious hazard.

¶ 24 With regard to the three other cases that Kun Mook claims specifically held that the open-and-obvious rule did not apply to ordinary-negligence claims, he fails to discuss the facts or analysis of any of those cases, except for stating in his reply brief, "[e]ach of these cases involve ordinary negligence causes of action where the court denied the defendant's attempted [*sic*] to use the open and obvious doctrine as a bar to the plaintiff's recovery." By failing to explain how these cases aid his claim, Kun Mook has violated Illinois Supreme Court Rule 341(h)(7) (eff. May 28, 2018) (appellant's brief shall contain argument, "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities ***."). Therefore, he has forfeited this portion of his argument. *Velocity Investments*, *LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010) (the appellate court is entitled to have the issues clearly defined with pertinent authority presented and coherent arguments developed; it is not a repository for a party to foist upon it the burden of argument and research).

¶ 25    It does not matter that Kun Mook labeled his complaint as one sounding in negligence and not in premises liability.  Young Rok was entitled to raise the open-and-obvious rule to either an ordinary-negligence claim or a premises-liability claim.  No matter how Kun Mook construes the facts here, it is undisputable that Young Rok was a landowner and Kun Mook was an invitee on his property.  In fact, Kun Mook's complaint specifically alleged that Young Rok resided at the house where he was injured, and he referred to himself as an invitee.

¶ 26    Thus, it is likewise irrelevant that  Kun Mook claims that, "[u]nder circumstances where a landowner's conduct in creating an unsafe condition precedes the plaintiff's injury, a plaintiff may elect to pursue a negligence claim, a premises liability claim, or both" (citing *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 717 (1998)).  As we have stated, a defendant can raise an open-and-obvious defense to either an ordinary-negligence case or a premises-liability case.

In *Reed*, a customer stepped on a rusty nail that was protruding from a board in the middle of a pathway.  She was injured and sued Wal-Mart for negligence.  *Id.* at 713.  Wal-Mart did not raise the open-and-obvious doctrine as a defense to the plaintiff's complaint (most likely because the nail was not open and obvious).  The trial court refused to give jury instructions based upon negligence and instead gave an instruction that required the plaintiff to prove that Wal-Mart had actual or constructive knowledge of the dangerous condition on the property.  *Id*. at 714-15.  On appeal, the reviewing court found that the trial court abused its discretion when it required the plaintiff to prove actual or constructive notice to Wal-Mart, as the evidence presented made it probable that Wal-Mart employees had in fact created the dangerous condition.  *Id*. at 716-17.  As we have stated, the open-and-obvious rule did not come into play in *Reed*, and it does not aid Kun Mook's arguments on appeal.  As our supreme court has stated, "the character of a pleading should be determined from its content, not its label.  Accordingly, when analyzing a party's

request for relief, courts should look to what the pleading contains, not what it is called." (Internal quotation marks omitted.) *In re Parentage of Scarlett Z.-D.*, 2015 IL 117094, ¶ 64.

¶ 27 Here, as a landowner, Young Rok had a duty to protect Kun Mook, as an invitee, from dangers on the property. *Bartkowiak v. City of Aurora*, 2018 IL App (2d) 170406, ¶28 n.2 (citing *Simpkins*, 2012 IL 110662, ¶ 20). However, as we have noted, a landowner does not have a duty to protect an invitee from open-and-obvious conditions on the property. We fail to understand how any reasonable person could not have appreciated the open-and-obvious danger of tying two ladders together and placing those ladders against a tree limb 20 to 25 feet above the ground, the very limb that he was attempting to cut down. We also find that no exception to the open-and-obvious rule applies here. Kun Mook was certainly not distracted from noticing that he was climbing the two ladders with a chainsaw in his hand. We also find that the deliberate-encounter exception does not apply. No reasonable person would expect that Kun Mook would climb the ladders and cut down the limb—*with the top ladder leaning against the limb to be cut*—because the advantage of getting rid of the limb outweighed the incredible risk of doing so.

¶ 28 Having found that the open-and-obvious rule applied here, and that no exception to the rule applied, we find that Young Rok had no duty. Thus, summary judgment in favor of Young Rok was proper. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007) (summary judgment for defendant is proper if plaintiff fails to establish any element of cause of action).

¶ 29 We must note that, in addition to finding that Young Rok had no duty because the danger was open and obvious, we also find that Young Rok had no duty because Kun Mook's injuries were not foreseeable. As we have noted, a relationship-induced duty is the sum of four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on

the defendant." *Simpkins*, 2012 IL 110662, ¶ 18. An injury is not reasonably foreseeable when it results from freakish, bizarre, or fantastic circumstances. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 31. The conduct that Kun Mook engaged in here—tying two ladders together, *placing the top ladder against the very limb that was to be cut*, climbing the ladders with dress shoes on and a chainsaw in this hand, and, finally, cutting the limb that led to his fall constitute, as a matter of law, freakish, bizarre, and fantastic circumstances.

¶ 30    Even if we were to find that (1) Young Rok had a duty to protect Kun Mook from the hazard they both created, (2) Young Rok breached that duty, and (3) that breach proximately caused Kun Mook's injuries, we would find that Kun Mook *still* could not recover from Young Rok, because, as a matter of law, Kun Mook was more than 50% liable for his injuries.

¶ 31    In *Alvis v. Ribar*, 85 Ill. 2d 1, 24-25 (1981), our supreme court abolished the doctrine of contributory negligence (a plaintiff who was any percent negligent was totally barred from recovery) and replaced it with "pure" comparative fault (a plaintiff's damages were simply reduced by the percentage of fault attributable to him). The comparative-fault rule adopted in *Alvis* was then modified by statute in 1986 to a "modified form" of comparative negligence when the legislature provided for a limitation on recovery in tort actions, as follows:

> " 'In all actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, the plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the

plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff.' " *Board of Trustees of Community College District No. 508, City of Cook v. Coopers & Lybrand*, 208 Ill. 2d 259, 267 (2003) (quoting Ill. Rev. Stat. 1987, ch. 110, ¶ 2-1116 (now codified at 735 ILCS 5/2-1116)).[2]

¶ 32 Here, after initially looking at the tree limb, Kun Mook immediately said that the work should be left to professionals because the tree limb was too large and too high and the work would be dangerous. Nevertheless, he marched on in the face of that danger, climbing the ladders while wearing dress shoes and carrying a chainsaw. Then he proceeded to cut the limb, against which the top ladder was leaning. As a matter of law, we find that these actions go well beyond a showing of more than 50% liability. Kun Mook is also barred from recovery since he assumed the risk when he knew that cutting the limb under these circumstances was dangerous but decided to do so anyway. *Hastings v. Exline*, 326 Ill. App. 3d 172, 176 (2001) (a plaintiff will be deemed to have voluntarily assumed a known risk when he fails to leave or chooses to remain in the area of risk under circumstances manifesting his willingness to accept it).

¶ 33 III. CONCLUSION

---

[2] This version of section 2-1116 preceded the amendments of Public Act 89-7, § 15, eff. Mar. 9, 1995. Our supreme court found Public Act 89-7 unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). The version of section 2-1116 currently in effect is, therefore, the version that preceded the amendments of Public Act 89-7. See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1 (2008); *Jain v. Johnson*, 398 Ill. App. 3d 135, 138 n.1 (2010).

¶ 34    In sum, we find that Young Rok, as a landowner, had a general duty to protect Kun Mook, his invitee, from dangerous conditions on his property.  However, the open-and-obvious rule provides an exception to that duty and it applies to both negligence and premises-liability cases, so it was irrelevant that Kun Mook's complaint sounded in negligence.  Since the danger here was very open and obvious, and since no exception to that rule applied, Young Rok had no duty to protect Kun Mook.  Also, Kun Mook's injuries were not foreseeable when they stemmed from freakish, bizarre, and fantastic circumstances.    Finally, even if we had found that all elements of this negligence case had been met, we would still find, as a matter of law, that Kun Mook was barred from recovery because  (1) he was more than 50% liable for his injuries and (2) he assumed the risk of his injuries.  Therefore, the trial court property granted summary judgment in Young Rok's favor.

¶ 35    The judgment of the circuit court of Lake County is affirmed.

¶ 36    Affirmed.